ACCEPTED
15-25-00027-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/8/2025 4:37 PM
CHRISTOPHER A. PRINE
CLERK

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/8/2025 4:37:46 PM
CHRISTOPHER A. PRINE
Clerk

NO. 15-25-00027-CV

IN THE COURT OF APPEALS
FOR THE FIFTEENTH JUDICIAL DISTRICT
AT AUSTIN, TEXAS

**NICHOLAS KREINES, DAVID P. RYAN, LIBERTY MINERAL
PARTNERS LLC, NAK RESOURCES INC,
AND CGR OIL AND GAS, LLC**,
*Appellants,*

v.

**ES3 MINERALS, LLC**,
*Appellee.*

## APPELLANTS' MOTION
## FOR APPELLATE REVIEW UNDER TRAP 29.6

Appellants Nicholas Kreines ("Kreines"), David P. Ryan ("Ryan"),
Liberty Mineral Partners LLC ("LMP"), NAK Resources Inc. ("NAK"), and
CGR Oil and Gas, LLC ("CGR," and all together, the "Appellants") file this
Motion for Appellate Review under TRAP 29.6.

### PROCEDURAL BACKGROUND

Appellants appealed a temporary injunction order issued in *ES3
Minerals, LLC v. Nicholas Kreines, et al.,* Cause No. D-1-GN-24-006854 in
the 459th Judicial District Court in Travis County, Texas on December 20,
2024 (the "Temporary Injunction"). Via the docket-equalization procedure,
the appeal was transferred to the Eighth Court of Appeals at El Paso.

Appellants subsequently removed the case to the Business Court on December 23, 2024. As a result of that transfer, this Court accepted a transfer of venue under Texas Rule of Appellate Procedure 27a on March 18, 2025.

On February 27, 2025, the Business Court simultaneously heard Appellants' Motion to Dissolve the Temporary Injunction and Appellee's Motion to Modify Temporary Injunction. The Business Court issued its Order Modifying Temporary Injunction and a Modified Temporary Injunction reflecting those modifications on April 7, 2025.

## ARGUMENT & AUTHORITIES

Appellants request the Court review the Order Modifying Temporary Injunction and the Modified Temporary Injunction, copies of which are attached hereto as **Exhibits A and B**, respectively, and included in the supplemental record filed contemporaneously with this motion. *See* Tex. Civ. Prac. & Rem. Code § 29.6(b).

Under Texas Rule of Appellate Procedure 29.6, "[w]hile an appeal from an interlocutory order is pending, on a party's motion . . . the appellate court may review . . . a further appealable interlocutory order concerning the same subject matter . . . ." Tex. R. App. P. 29.6(a)(1). An

appeal from an order modifying a temporary injunction is an appealable interlocutory appeal. "Because an order that modifies a temporary injunction is the equivalent of an order that dissolves a temporary injunction and grants a new one, Section 51.014 [of the Texas Civil Practices & Remedies Code] grants an appellate court 'jurisdiction to review an order modifying a temporary injunction by interlocutory appeal.'" *W. I-10 Volunteer Fire Dep't v. Harris Cnty. Emergency Servs. Dist. No. 48*, 507 S.W.3d 356, 359 (Tex. App.—Houston [1st Dist.] 2016, no pet.), overruled in part on other grounds by *Harley Channelview Props., LLC v. Harley Marine Gulf, LLC*, 690 S.W.3d 32, 41 n.50 (Tex. 2024) (quoting *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2003, no pet.)).

The Modified Temporary Injunction is also reviewable as it concerns the same subject matter as the Temporary Injunction. Indeed, both are nearly identical to each other, with the exception that the Business Court modified paragraph 13. *See Tanguy v. Laux*, 259 S.W.3d 851, 855 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (permitting review where temporary injunction and later amended temporary injunction were "substantively the same."); *Ahmed*, 99 S.W.3d at 687 (permitting

3

review where injunction orders concerned "exactly the same subject matter.").

Appellants request that the Court review the Modified Temporary Injunction as it is the current injunction to which Appellants are subject. By permitting review of the Modified Temporary Injunction, the Court will allow the parties to litigate the live injunction, thereby preventing waste of judicial resources, as contemplated by Texas Rule of Appellate Procedure 29.6. Appellants seek to submit their Brief on the Merits based on the Modified Temporary Injunction, subject to the Court's grant of Appellants' Motion for Extension of Time to File Brief filed on April 7, 2025.

For these reasons, Appellants request that this Court grant Appellants' Motion for Appellate Review. Appellants also request any other relief to which they may be entitled.

Respectfully submitted,

**LLOYD GOSSELINK**
 **ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701
(512) 322-5800 Phone
(512) 472-0532 Facsimile

By:   */s/ James F. Parker*
        JAMES F. PARKER
        State Bar No. 24027591
        jparker@lglawfirm.com
        GABRIELLE C. SMITH
        State Bar No. 24093172
        gsmith@lglawfirm.com
        SYDNEY P. SADLER
        State Bar No. 24117905
        ssadler@lglawfirm.com

**ATTORNEYS FOR APPELLANTS**

## CERTIFICATE OF CONFERENCE

I hereby certify that I spoke with counsel for Appellee, Michael Marin, on April 8, 2025. Mr. Marin informed me that Appellee does not oppose the Court's review of the Modified Temporary Injunction.

*/s/ James F. Parker*
JAMES F. PARKER

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following attorneys of record via the Court's electronic filing case management system and electronic mail on this 8th day of April, 2025.

Michael D. Marin
mmarin@boulettegolden.com
Tori B. Bell
tori@boulettegolden.com
BOULETTE GOLDEN & MARIN L.L.P.
2700 Via Fortuna, Suite 250
Austin, TX 78746

**ATTORNEYS FOR APPELLEE**

*/s/ James F. Parker*
JAMES F. PARKER

# EXHIBIT A



# The Business Court of Texas, Third Division

ES3 MINERALS, LLC,

    *Plaintiff/Counter-Defendant,*

v.

NICHOLAS KREINES, DAVID P. RYAN, LIBERTY MINERAL PARTNERS LLC, NAK RESOURCES, INC., AND CGR OIL AND GAS, LLC,

    *Defendants/Counter-Plaintiffs.*

§
§
§
§
§
§
§
§
§
§
§
§

Cause No. 24-BC03B-0005

---

## ORDER MODIFYING TEMPORARY INJUNCTION

---

Before the Court are two motions addressing the Temporary Injunction entered by Judge Eiserloh on November 26, 2024, 1) Defendants' Motion to Dissolve and 2) Plaintiff's Opposed Motion to Modify Temporary Injunction, Subject to Response to Motion to Dissolve. As detailed below, the Court partially grants Plaintiff's motion to modify and modifies paragraph 13 and the corresponding "Ordered" section of the Temporary Injunction, enters a Modified Temporary Injunction Order as reflected in the attached Exhibit A, and denies all other relief requested.

## BACKGROUND

This lawsuit was filed in Travis County District Court on September 18, 2024. ES3 Minerals, LLC ("ES3") moved for a temporary injunction that was heard on October 29, 2024 and October 30, 2024 by Judge Eiserloh. On November 26, 2024, the trial court entered a temporary injunction against Defendants Nicholas Kreines ("Kreines"), David Ryan ("Ryan"), and Liberty Mineral Partners LLC ("LMP"). In its seven-page injunction, the trial court found that ES3 had asserted valid causes of action, shown a probable right to recover on multiple claims, and had shown there would be a probable, imminent, and irreparable injury from the actions ES3 sought to enjoin. The trial court enjoined Kreines, Ryan and LMP from: 1) "Entering or negotiating any transaction with any of Plaintiff's Buyers"; 2) "Encouraging Plaintiff's Buyers to discontinue or limit their relationships with Plaintiff"; and 3) Soliciting any of Plaintiff's employees or officers for employment or encouraging them to terminate their relationships with Plaintiff."[1] To identify the prohibited transactions the order included the following definitional paragraph:

> 13. The Court finds that Plaintiff's list of Plaintiff's Buyers attached to this order (which is marked CONFIDENTIAL) are ES3 customers for whom Kreines was a representative to and did business with on behalf of ES3 during the 24-month period preceding Kreines's termination date of January 31, 2024, and specifically incudes the entities on the list as well as any subsidiaries, funds or other entities, formed by the listed entities for the purposes of executing a transaction as well as entities the individual contacts on the list are currently working for, and thus are within the definition of Customers and Prospective Customers under the Agreements.[2]

---

[1] Temporary Inj. 6, Dec. 18, 2024.

[2] *Id.* ¶ 13, Dec. 18, 2024 (emphasis added).

Attached to the order was a list, deemed confidential by the trial court, of over 90 specific "ES3 Trusted Buyers" and approximately 200 associated contacts with whom the Defendants were enjoined from negotiating a transaction.

After the temporary injunction was issued, Defendants removed this action to the Texas Business Court on December 23, 2024. Defendants then filed Defendants' Motion to Dissolve Temporary Injunction, ES3 filed their response, and Defendants filed a reply in support. Plaintiffs then filed Plaintiff's Opposed Motion to Modify Temporary Injunction, Subject to Response to Motion to Dissolve and Defendants filed their response. Both motions were heard on February 27, 2025.

In their motion, Defendants argue the temporary injunction is deficient in the following ways: 1) it does not meet the specificity requirement of Rule 683 since it fails to identify the specific customers with whom the Defendants are prohibited from transacting business; 2) the temporary injunction does not set forth the reasons for its issuance in violation of Rule 683; and 3) the bond amount set for the temporary injunction is insufficient.

In its response, ES3 argues the injunction is sufficiently specific, that Defendants' motion is an attempt to relitigate issues previously decided by the trial court, and the injunction sufficiently sets forth the reasons for its issuance. In their motion to modify, while not conceding the validity of Defendants' motion, ES3 suggests modifications to the temporary injunction aimed at addressing Defendants' specificity contentions.

## ANALYSIS

To analyze the alleged deficiencies in the temporary injunction order, the Court reviews relevant case law and the text of Texas Rules of Civil Procedure 683 and 684.

**Legal Standard**

The purpose of a motion to dissolve is to provide a means to show that changed circumstances or changes in the law require the modification or dissolution of the injunction; it is not to give an unsuccessful party an opportunity to relitigate the propriety of the original grant."[3] A respondent cannot use a motion to dissolve or a motion to modify to relitigate the basis for the injunction when the basis has not changed.[4] Decrees of injunction may be reviewed, opened, vacated or modified by the trial court upon a showing of changed circumstances.[5] The determination of the question of whether to dissolve a temporary injunction is a matter lying within the discretion of the trial court.[6] The trial court has no duty, upon the filing of a motion to dissolve, to reconsider the propriety of the granting of a temporary injunction, at least where the motion does not allege fundamental error, and also where the motion is not based upon evidence of changed conditions but is

---

[3] *Tober v. Turner of Texas, Inc.*, 668 S.W.2d 831, 836 (Tex. App.—Austin 1984, no writ) ); *see also, e.g.*, *Gruss v. Gallagher*, 680 S.W.3d 642, 660 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *Chase Manhattan Bank v. Bowles*, 52 S.W.3d 871, 879 (Tex. App.—Waco 2001, no pet.); *Murphy v. McDaniel*, 20 S.W.3d 873, 877 (Tex. App.—Dallas 2000, no pet.).

[4] *Chase Manhattan Bank*, 52 S.W.3rd at 879.

[5] *See Id.* quoting (*Smith v. O'Neill,* 813 S.W.2d 501, 502 (Tex. 1991)).

[6] *Tober,* 668 S.W.2d at 834.

rather based upon evidence which was before the court at the prior hearing on the motion to grant the temporary injunction.[7]

**Rule 683 and 684**

Texas Rule of Civil Procedure 683 governs orders granting injunctions and restraining orders and requires the order to set forth the reasons for its issuance, be specific in its terms, and describe in reasonable detail the act or acts sought to be restrained.[8] The requirements of Rule 683 "are mandatory, and an order granting a temporary injunction that does not meet them is subject to being declared void and dissolved."[9] A trial court's failure to comply with an express requirement of Rule 683 is fundamental error;[10] it renders the injunctive order void, rather than merely voidable.[11]

"An injunction must be definite, clear, and concise, leaving the person enjoined in no doubt about his duties, and should not call on him for interpretations, inferences, or conclusions."[12]

---

[7] *Id.* at 835.

[8] TEX. R. CIV. P. 683.

[9] *Qwest Communs. Corp. v. AT&T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per curiam).

[10] *See Henke v. Peoples State Bank*, 6 S.W.3d 717, 721 (Tex. App. —Corpus Christi 1999, pet. dism'd w.o.j.), *abrogation recognized by Tex. Wrecker Serv. v. Resendez*, No. 13-16-00515-CV, 2017 WL 711642, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 23, 2017, no pet.); *Glennie v. Petty*, 591 S.W.2d 951, 952 (Tex. App.—Tyler 1979, no pet.); *United Farm Workers, AFL-CIO v. H.E. Butt Grocery Co.*, 590 S.W.2d 600, 606 (Tex. App.—Corpus Christi 1979, no writ) (holding that trial court's entry of overbroad injunction was not fundamental error and modifying rather than reversing order).

[11] *See, e.g., In re Luther*, 620 S.W.3d 715, 721 (Tex. 2021) (orig. proceeding) (per curiam); *Grounds v. First GroundRock Royalties, LLC*, 629 S.W.3d 674, 678 (Tex. App.—San Antonio 2021, no pet.); *In re Chaumette*, 456 S.W.3d 299, 307 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re Corcoran*, 343 S.W.3d 268, 269 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

[12] *Vaughn v. Drennon*, 202 S.W.3d 308, 316 (Tex. App.—Tyler 2006, no pet.).

Additionally, Texas Rule of Civil Procedure 684 requires a court granting any temporary restraining order to set a bond, executed by the applicant, and filed with the clerk.[13] The determination of the adequacy of the bond set by the trial court is to be made on a case-by-case basis considering the record before the reviewing court.[14] The amount of a bond is within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion.[15] The failure to require a bond in a sufficient amount does not render an injunction void.[16]

**Application**

The Court considers each of the Defendants' contentions concerning the alleged deficiencies in the temporary injunction order beginning with their allegations that the injunction does not sufficiently specify who the parties are prohibited from transacting business.

**i.     Specificity of Prohibited Acts**

Defendants' specificity arguments focus on portions of paragraph 13 that apply the injunction to, not only the individually listed and named "Plaintiffs Buyer's," but provisions that expand the definition of "Plaintiffs Buyer's" to include:

---

[13] TEX. R. CIV. P. 684.

[14] *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 203 (Tex. App.—Fort Worth 2005, no pet.).

[15] *Id.*

[16] *El Paso Dev. Co. v. Berryman*, 729 S.W.2d 883, 888 (Tex.App.—Corpus Christi 1987, no writ).

any subsidiaries, funds or other entities, formed by the listed entities for the purposes of executing a transaction as well as entities the individual contacts on the list are currently working for, and thus are within the definition of Customers and Prospective Customers under the Agreements.[17]

Defendants argue this language does not meet the specificity requirement of Rule 683 for multiple reasons. They assert they have no way of knowing the corporate structure of entities to whom they cannot sell mineral interests. To enforce the temporary injunction, they claim, the Court would be forced to conduct an additional hearing to consider evidence about the buyer's corporate structure, the purpose for which a corporate structure was organized, and the buyer's roster of employees. Defendants also argue other courts have rejected non-specific provisions included in similar orders. Defendants primarily cite three cases in support of their arguments: *In re Luther, Computek Computer & Office Supplies, Inc. v. Walton* and *In re Krueger.*

ES3 contends the temporary injunction issued by the trial court is sufficiently specific. It argues it is common in the mineral industry for buyers to form transaction specific entities and that Kreines, as the principal relationship manager to ES3's Buyers for several years, knows exactly which buyers are off-limits to him and Defendants. ES3 notes the temporary injunction attaches a specific list of ES3's Buyers and includes an explanation of the entities and individuals that are off-limits. Finally, ES3 argues the language concerning subsidiaries, funds, or other entities, and the language restricting Defendants from doing business with individuals on the list, regardless of where they work, is necessary to prevent circumvention of the injunction.

---

[17] Temporary Inj. ¶ 13, Dec. 18, 2024.

The Court first reviews Defendants' cited cases: *Luther, Computek*, and *Krueger.*

In *Luther*, a Dallas salon owner sought relief from a contempt judgment issued against her for violating a temporary restraining order that prohibited her from operating in-person services during the COVID-19 pandemic.[18] Luther argued that the order was void since it did not specify the exact conduct prohibited.[19] The Texas Supreme Court agreed, ruling that temporary restraining order issued by the trial court, failed to clearly outline which specific regulations Luther violated or which services at the salon were restrained.[20] The Court reasoned, "Luther could not know without analyzing a multitude of regulations—state, county, and city emergency orders referenced in the temporary restraining order, plus the federal guidelines they referenced—what conduct was prohibited at any given time the temporary restraining order was in effect."[21]

More persuasive is *Computek*.[22] There, OEM, an office supply company, sued Computek and its owner, a former OEM employee, alleging theft of OEM's trade secrets.[23] After the trial court issued a permanent injunction, Computek appealed, asserting the injunction was improperly broad and lacked specificity since it failed to clearly identify which OEM clients Computek could not contact.[24] The Dallas Court of Appeals agreed,

---

[18] *In re Luther*, 620 S.W.3d at 718.

[19] *Id.*

[20] *Id.* at 723.

[21] *Id.*

[22] *Computek Comput. & Off. Supplies, Inc. v. Walton*, 156 S.W.3d 217 (Tex. App.—Dallas 2005, no pet.).

[23] *Id.* at 219–20.

[24] *Id.* at 221–22.

noting that the injunction needed to specifically name the clients and define the information that could not be used or disclosed and that the lack of specificity could not be cured by any knowledge Computek might have outside the permanent injunction.[25]

*In re Krueger* involved an executive barred from "contacting any of Cru Energy, Inc.'s investors or potential investors, or any other persons doing business with or potentially a participant in the business of Cru Energy, Inc."[26] The district court found Krueger violated that provision by sending emails to vendors of Cru Energy.[27] On review, the Austin Court of Appeals found the injunction was not sufficiently specific since it failed to describe in reasonable detail the individuals or organizations that Krueger was prohibited from contacting.[28] Notably, the injunction failed to name or otherwise identify those who are considered "investors or potential investors" of Cru Energy, and those who are "persons doing business with or potentially a participant in the business of" Cru Energy.[29] The Court rejected Cru's argument that Krueger was in a position to know who the investors and persons were doing business with Cru energy because an injunction must be as "definite, clear and precise as possible . . . without calling on [the enjoined party] for

---

[25] *Id.* at 222–23 ("Thus, the injunction itself must provide the specific information as to the off-limits clients, without inferences or conclusions, or, in this case, implied references to other records Computek might have.").

[26] No. 03-12-00838-CV, 2013 WL 2157765, at *1 (Tex. App.—Austin May 16, 2013, orig. proceeding).

[27] *Id.* at *2.

[28] *Id.* at *8.

[29] *Id.*

inferences or conclusions about which persons might well differ and without leaving anything for further hearing."[30]

The Court finds *Computek* and *Kruger* persuasive and analogous to paragraph 13 of the order issued by the trial court. Here, the injunction specifically names the ES3 Buyers that are off-limits to Defendants and attaches a list of those entities and individuals. These provisions are definite, specific and clear and the Court declines Defendants' suggestion to modify those provisions.

However, the second prohibition contained in paragraph 13 of the temporary order is less specific. It includes, in addition to the list of ES3 Buyers, "any subsidiaries, funds or other entities, formed by the listed entities for the purposes of executing a transaction" and "entities the individual contacts on the list are currently working for . . . ."[31] As in *Computek,* the prohibition on business dealings with "subsidiaries, funds, or other entities" depends on Defendants' knowledge of the ownership structure of the companies with whom they are attempting to enter a deal or it would require Defendants to perform an inquiry prior to dealing with any new companies and is comparable to the language in *Computek* that the Court found problematic. Similarly, the clause in paragraph 13 that prohibits executing a transaction with entities and individuals on the list that "are currently working for" the individual or entity would require Defendants to conduct an

---

[30] *Id.*

[31] Temporary Inj. ¶ 13, Dec. 18, 2024.

inquiry prior to any transaction about the status of any individuals and employees employed by the entity.

Rule 683 provides that a temporary injunction "shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained."[32] The purpose of Rule 683's specificity requirement is to "ensure that parties are adequately informed of the acts they are enjoined from doing and the reasons for the injunction."[33] The Texas Supreme Court has required "strict compliance with Rule 683, so that a temporary restraining order itself informs a party, unambiguously and with a reasonable degree of specificity, of the conduct to be restrained."[34] The requirements of Rule 683 are mandatory and must be strictly followed.[35]

Here, the order falls short of those specificity provisions. Therefore, the Court modifies the two definitional provisions in paragraph 13, as reflected in the attached Exhibit A, to more clearly specify the acts Kreines, Ryan and LMP are prohibited from committing.

### ii.      Sufficiency of reasoning for issuance of temporary injunction

Defendants also allege the temporary injunction fails to provide sufficient reasons for its issuance as required by Rule 683. Defendants contend that the temporary injunction order "must explain the reasons why the court believes the applicant's probable right will

---

[32] TEX. R. CIV. P. 683.

[33] *McCaskill v. Nat'l Circuit Assembly*, No. 05-17-01289-CV, 2018 WL 3154616, at *2 (Tex. App.—Dallas June 28, 2018, no pet.) (mem. op.).

[34] *In re Luther*, 620 S.W.3d at 723.

[35] *Id.*; *Qwest*, 24 S.W.3d at 337.

be endangered if the writ does not issue."[36]  Citing *Home Asset, Inc. v MPT of Victory Lakes Fcer LLC,* an unpublished opinion from the Houston Court of Appeals, Defendants argue that to the extent reasons were set forth in the temporary injunction issued by the Court, they were conclusory and  did not "articulate the factual basis on which it rests, effectively insisting that the reader accept the writer's say-so without explanation."[37]

In response, ES3 argues the temporary injunction sufficiently sets forth the reasons for its issuance.  ES3 notes the Court found it is likely to succeed in "proving Kreines misappropriated ES3's trade secrets for its own benefit and for the benefit of LMP and will continue to do so," that ES3 "will probably succeed on its breach of contract and tortious interference claims against the Defendants based on factual findings," that "Kreines and Ryan violated the Agreements and continue to do so"  that the "Plaintiff has shown there would be a probable imminent and irreparable injury from the actions it seeks to enjoin" and that it sets forth "the reason why ES3 would suffer probable, imminent and irreparable injury absent an injunction."[38]

---

[36] Def.s' Mot. to Dissolve Temporary Inj. 18, Jan. 7, 2025; *IPSecure, Inc. v. Carrales*, No. 04-16-00005-CV, 2016 WL 3342108, at *2 (Tex. App.—San Antonio June 15, 2016, no pet.)(mem. op.).

[37] *Home Asset, Inc. v MPT of Victory Lakes Fcer, LLC,* No. 01-22-00441-CV, 2023 WL 3183322, at *2 (Tex. App.—Houston [1st Dist.] May 2, 2023, no pet.) (mem. op.); Def.s' Mot. to Dissolve Temporary Inj. 18, Jan. 7, 2025.

[38] Pl.'s Resp. to Def.s' Mot. To Dissolve Temporary Inj. 21–22, Feb 14, 2025.

Rule 683 requires a temporary injunction to include the "reasons for its issuance."[39] That requirement is mandatory and a temporary injunction that does not meet it is subject to being declared void and dissolved as it would constitute fundamental error.[40]

While Defendants relies on *Home Asset* and *Clark* the underlying facts there are distinguishable. In *Home Asset*, the Court found that a single sentence in a temporary order that addressed irreparable injury, stating that "the appellees will be irreparably harmed if the appellants are allowed to terminate the leases without explaining why doing so will cause irreparable harm" was a "mere recital" and therefore insufficient under Rule 683 and therefore void.[41]

The facts in *Clark v. Hastings* are also distinguishable. In *Clark,* the trial court entered an injunction that it modified just two weeks later by entering a second order.[42] The Houston Appellate Court found the changes made by the second order to be of a "substantive nature" making it the operative temporary injunction order subject to the requirements of Rule 683.[43] The Court held the order contained no attempt to satisfy the requirements of Rule 683 and both parties agreed the second order was insufficient.[44] The Court also commented that even if both orders were read in tandem, the only language that

---

[39] TEX. R. CIV. P. 683.

[40] *See Henke*, 6 S.W.3d at 721.

[41] 2023 WL 3183322, at *2–3.

[42] *Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 363–64 (Tex. App. 2022).

[43] *Id.* at 370.

[44] *Id.* at 370, 371 n.8.

provided the basis for the ruling was itself insufficient.[45] That portion of the order provided, "The Respondents have violated certain covenants contained in the said Securities Purchase Agreement and will, if not restrained, likely engage in conduct that will cause Petitioners to suffer immediate and irreparable injury, loss or damage; and . . . the threatened damage to Petitioners is impossible to accurately and fully assess."[46] The Court held this brief, conclusory explanation did not satisfy Rule 683.

The trial court's order here is more detailed and contains significantly more exposition than those in *Clark*. In fact, the trial court's temporary injunction contained multiple provisions that "set forth the reasons" for the issuance of the injunction. In addition to the excerpts ES3 cited above, the temporary injunction begins by summarizing parties briefing leading up to the temporary injunction.[47] It also contains paragraph 16 entitled "Probable, Imminent, And Irreparable Harm" that provides among other things that: "Plaintiff has shown . . . the loss of exclusive use of its Trade Secrets, a loss of deals with specific buyers, a decrease in gross profits, and a loss of employees, which is likely to continue unless Defendants are enjoined."[48] Paragraph 16 also recites that Ryan and Kreines were "closely associated with Plaintiff's goodwill, and by their actions they have diluted Plaintiff's goodwill with Plaintiff's Buyers and will continue to do so."[49] The

---

[45] *Id.* at 374.

[46] *Id.*

[47] Temporary Inj. Page 1, Dec. 18, 2024.

[48] *Id.* ¶ 16.

[49] *Id.*

imminent and irreparable injuries are identified as "misappropriation of trade secrets . . .

loss of goodwill and customers" and "breaches of their noncompetition agreements."[50]

And while the seven-page order does not provide an exhaustive exposition of the

factual basis underlying its conclusions and could have contained additional specificity, the

Court finds the order contains a sufficient description to "set forth the basis" of the

injunction.

### iii.    Bond Sufficiency

Finally, Defendants challenge the bond amount set by the trial court. Following the

hearing conducted in this matter, the trial court's temporary injunction set ES3's bond at

$25,000. Defendants contend the bond amount is inadequate and contrary to the evidence.

Defendants rely on *Franklin Sav. Association v. Reese*, a case from the Austin Court of

Appeals where the trial court found a $10,000 bond an improper and  disproportionately

small sum, unable to protect the $25 to $50 Million property at issue.[51] They also rely on

Justice Young's dissent in *Van Huis v. Marine Ventures, Ltd.*, where he asserted that a

nominal bond in a high value case "could be tantamount to dispensing the bond requirement

altogether."[52]

In response, Plaintiff argues that the Defendants are attempting to relitigate issues

determined in the sound discretion of the court and that the bond amount is sufficient based

on the evidence. ES3 also contends Texas law requires evidence of lost-profits, not lost-

---

[50] *Id.*

[51] 756 S.W.2d 14, 16 (Tex. App.—Austin 1988, no writ).

[52] 672 S.W.3d 22, 26 (Tex. 2023) (Young, J., dissenting).

gross revenues,[53] and that Defendants have provided only evidence of lost-gross revenues. Finally, ES3 cites *Topheavy Studios, Inc. v. Doe,* contending that without evidence of lost profits, the $25,000 bond amount is sufficient as a matter of law.[54]

Rule 684 requires the trial court to set a bond when it grants a temporary injunction.[55] The text of the rule provides no guidance on the "amount of security" the Court must require.[56] But courts have held that the purpose of a bond is to protect the enjoined party from any possible damages occurring as a result of an improperly granted injunction.[57] The *amount* of a bond is within the trial court's sound discretion, but a temporary injunction issued *without a bond* is void.[58] And the failure to require a bond in a sufficient amount does not render an injunction void.[59]

"The purpose of the motion to dissolve is to provide a means to show that changed circumstances or changes in the law require the modification or dissolution of the

---

[53] *See, e.g., Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 n.1 (Tex. 1992) ("The correct measure of damages is lost net profit, not gross profits."); *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (same); *MJAH Holdings, LLC v. Henson*, No. 03-18-00012-CV, 2019 WL 1413282, at *5 (Tex. App.—Austin Mar. 29, 2019, no pet.) (mem. op.) (same).

[54] No. 03-05-00022-CV, 2005 WL 1940159, at *7–8 (Tex. App.—Austin Aug. 11, 2005, no pet.).

[55] TEX. R. CIV. P. 684.

[56] *Id.*

[57] *IAC*, 160 S.W.3d at 203; *Bayoud v. Bayoud*, 797 S.W.2d 304, 312 (Tex. App.—Dallas 1990, writ denied).

[58] *Whitlow v. Polley*, 670 S.W.2d 318, 319 (Tex. App.—Tyler 1984, no writ) (emphasis added); *IAC*, 160 S.W.3d at 203.

[59] *El Paso,* 729 S.W.2d at 888.

injunction; the purpose is not to give an unsuccessful party an opportunity to relitigate the propriety of the original grant."[60]

In this case, this Court did not conduct the underlying temporary injunction hearing, hear the evidence, issue the temporary injunction, nor set the amount of the bond. The parties have presented insufficient evidence of changed circumstances since the issuance of the current bond. And while a motion to dissolve is the proper mechanism to address a *void* temporary injunction—one where no bond was set—here the district court temporary injunction set a bond, which met the threshold requirements of Rule 684.[61] Since the Defendants have not demonstrated a change of circumstances since the temporary injunction was granted, the Court does not reconsider nor modify the amount of the original bond setting.

### SUMMARY

The Court, after examining the pleading and documents, the arguments of counsel, and all other matters properly before the Court, finds:

- That paragraph 13 of the Temporary Injunction entered in the 459th Travis County on November 26, 2024 does not sufficiently meet the specificity requirement under Rule 683 and therefore should be partially modified.

- The Temporary Injunction sufficiently set forth the reasons for its issuance as required by Rule 683.

---

[60] *Tober,* 668 S.W.2d at 836.

[61] *See Id.*; TEX. R. CIV. P. 684.

- That the trial court set a bond in the case in accordance with Rule 684 and that no changed circumstances have been plead that warrant the reexamination of the sufficiency of the bond amount.

Based on the foregoing, the Court **ORDERS** a modification of the Temporary Injunction issued on November 26, 2024 as reflected in the attached Exhibit A, and the Court issues a new Modified Temporary Injunction reflecting those modifications. The Court denies all other relief requested.

_____
Hon. Patrick K. Sweeten
Judge of the Texas Business Court
Third Division

DATED: April 7, 2025

# Exhibit A



# The Business Court of Texas, Third Division

ES3 MINERALS, LLC,
    *Plaintiff/Counter-Defendant,*
v.
NICHOLAS KREINES, DAVID P.
RYAN, LIBERTY MINERAL
PARTNERS LLC, NAK
RESOURCES INC., AND CGR
OIL AND GAS, LLC,
*Defendants/Counter-Plaintiffs.*

§
§
§
§
§
§
§
§
§
§
§

Cause No. 24-BC03B-0005

## MODIFIED TEMPORARY INJUNCTION

On October 29–30th, 2024, the 459th District Court of Travis County heard Plaintiff ES3 Minerals, LLC's ("Plaintiff" or "ES3") Application for Temporary Injunction. On November 26, 2024, the district court issued a temporary injunction order. Later, the above-captioned case was removed to this Court. This Court held a hearing on February 27, 2025, on Defendants' Motion to Dissolve Temporary Injunction and Plaintiff's Opposed Motion to Modify Temporary Injunction, Subject to Response to Motion to Dissolve and after examining the pleadings and documents, the arguments of counsel, the evidence presented, and the full record, the Court finds as follows:

**VALID CAUSES OF ACTION**

1.      Plaintiff has asserted valid causes of action.

**I.      PROBABLE RIGHT TO RELIEF**

2.      Plaintiff has shown a probable right to relief against Defendants Nicholas Kreines ("Kreines"), David P. Ryan ("Ryan"), and Liberty Mineral Partners LLC ("LMP").

**A.  DEFENDANT KREINES**

3.      The Court finds that Plaintiff has sufficiently shown that it will probably succeed on the merits of its claims against Defendant Kreines for (1) violations of trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"), (2) breaches of fiduciary duty, and (3) breaches of contract (confidentiality, non-solicitation-of-buyers, non-solicitation-of-employees, and non-competition provisions).

4.      The Court finds that Plaintiff will probably succeed on its claim that Defendant Kreines kept and continues to use and disclose materials and information that are Plaintiff's trade secrets to land deals for Defendant LMP, including deals with Plaintiff's Buyers; that Defendant Kreines facilitated a deal for Defendant LMP with an existing Plaintiff Buyer while still employed with Plaintiff; and that Defendant Kreines solicited and will continue to solicit Plaintiff's Buyers and employees for Defendant LMP's benefit.

**B.  DEFENDANT RYAN**

5.      The Court finds that Plaintiff has sufficiently shown that it will probably succeed on the merits of its claims against Defendant Ryan for breaches of contract (non-solicitation-of-buyers, non-solicitation-of-employees, and non-competition provisions). Plaintiff has also sufficiently shown for this temporary injunction that the relevant provisions of Defendant Ryan's contract did not change after his brief absence from the company.

6.      The Court finds that Plaintiff will probably succeed in showing that Defendant

Ryan has made and will continue to make deals with Plaintiff's Buyers.

### C. DEFENDANT LMP

7.      The Court finds that Plaintiff will probably succeed in showing that Defendant LMP tortiously interfered with Plaintiff's agreements with Defendants Kreines and Ryan (including their noncompetition and non-solicitation provisions) and will continue to do so.

### D. TRADE SECRETS MISAPPROPRIATED

8.      The Court finds that Plaintiff will probably succeed on its claim that Plaintiff's Buyer information, including buyer lists, pricing information, contact information for key-decision makers, the specific asset preferences of those buyers, and the details of the mineral interest purchases of those buyers are Plaintiff's trade secrets ("Trade Secrets"). The Court further finds that Plaintiff will probably succeed on its claim that Plaintiff has taken reasonable measures under the circumstances to keep this information secret, and this information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other people who can obtain economic value from the disclosure or use of the information. The Court further finds that Plaintiff will probably succeed on its claim that Kreines misappropriated Plaintiff's Trade Secrets for his own benefit and the benefit of LMP and will continue to do so.

### E. BREACH OF CONTRACT AND INTERFERENCE

9.      The Court finds that Plaintiff will probably succeed on its claim that, as a condition of employment with Plaintiff, Defendants Kreines and Ryan entered into Confidentiality, Non-Competition and Non-Solicitation Agreements with identical terms ("Kreines Agreement" and "Ryan Agreement" respectively, and together, "Agreements").

10.     The Court finds that Plaintiff will probably succeed on its claim that Defendant Kreines has breached the Agreement's confidentiality provisions by taking, using, and disclosing

Plaintiff's Confidential Information for his own benefit and for the benefit of Defendant LMP.

11. In Paragraph 4 of their respective Agreements, Kreines and Ryan agreed to the following restrictions during employment with ES3 and for twenty-four (24) months thereafter:

> <u>Non-Competition; Non-Solicitation of Customers and Prospective Customers</u>. Employee acknowledges that in the course of fulfilling Employee's responsibilities to ES3, Employee will be a representative of the company to, and in some instances may be ES3's primary contact with, existing customers as of the Termination date and prospective customers with whom ES3 has contacted within the 24-month period preceding the Termination date (collectively, "Customers and Prospective Customers"). Employee agrees that the goodwill and relationships developed with ES3's Customers and Prospective Customers is a special, valuable and unique asset of ES3 and should be used for the exclusive benefit of ES3. Accordingly, Employee agrees that, during Employee's employment with ES3 and for twenty-four (24) months thereafter, regardless of the reason for or manner of termination, Employee will not, directly or indirectly, except in connection with Employee's employment with ES3: . . .
>
> (c) induce, solicit or take away (or attempt to induce, solicit, or take away) any Customer or Prospective Customer of ES3 and/or encourage any Customer or Prospective Customer to discontinue or limit its relationship with ES3; … or
>
> (e) divert or discourage any Customer or Prospective Customer from entering into a business relationship with and/or obtaining products or services from ES3.

12. The Court finds that Plaintiff will probably succeed on its claim that: (a) Defendants Kreines and Ryan have breached the Agreements' Non-Competition and Non-Solicitation Provisions by using for their own benefit Plaintiff's' goodwill and that they have diluted Plaintiff's goodwill with Plaintiff's Buyers; (b) Defendants Kreines and Ryan have induced, solicited and taken away (and attempted to induce, solicit, or take away) Plaintiff's Buyers and have encouraged Plaintiff's Buyers to discontinue or limit their relationship with ES3; (c) Defendants Kreines and Ryan have diverted or discouraged Plaintiff's Buyers from entering into a business relationship with and/or obtaining products or services from ES3; and (d) Defendant LMP was aware of Defendant Kreines and Ryan's contractual obligations to Plaintiff and intentionally interfered.

13. The Court finds that Plaintiff's list of Plaintiff's Buyers attached to this order* (which is marked CONFIDENTIAL) are ES3 customers for whom Kreines was a representative to and did business with on behalf of ES3 during the 24-month period preceding Kreines's termination date of January 31, 2024, and specifically includes the individuals and entities on the list as well as any subsidiaries of those entities that are known to be subsidiaries by Kreines, Ryan or LMP, and thus are within the definition of Customers and Prospective Customers under the Agreements ("**Plaintiff's Buyers**"). If an individual on the list begins working at a new entity, the new entity is not included within the definition of Plaintiff's Buyers, however the individual on the list remains within the definition of Plaintiff's Buyers and prohibitions on Kreines, Ryan and LMP in this order apply to transactions where they have knowledge the individual is personally involved.

14. In Paragraph 5 of their respective Agreements, Kreines and Ryan agreed to "that, during Employee's employment with ES3 and for twenty-four (24) months thereafter, regardless of the reason for or manner of termination, Employee will not, on behalf of Employee or any other person or entity except ES3, directly or indirectly hire, solicit, induce or encourage (or attempt to hire, solicit, induce or encourage) any employee or officer of ES3 to terminate his/her relationship with ES3, without the prior written consent of ES3." The Court finds that Plaintiff will probably succeed on its claim that Defendants Kreines and Ryan violated their Agreements by soliciting Plaintiff's employees, including Curtis Menchaca, inducing them to terminate their employment with Plaintiff and work for LMP.

---

* The attached Plaintiff's Buyers list has not been modified.

15.     The Court finds that Plaintiff will probably succeed on its claim that the Agreements are valid, and the post-employment restrictions recited above were ancillary to or a part of an otherwise enforceable agreement at the time the Agreements were made; ES3 performed under the Agreements; and Defendants Kreines and Ryan violated the Agreements and continue to do so.

## II.     PROBABLE, IMMINENT, AND IRREPARABLE HARM

16.     The Court finds that Plaintiff has shown there would be a probable imminent, and irreparable injury from the actions it seeks to enjoin. Plaintiff has shown the loss of exclusive use of its Trade Secrets, a loss of deals with specific buyers, a decrease in gross profits, and a loss of employees, which is likely to continue unless Defendants are enjoined. Defendants Ryan and Kreines were closely associated with Plaintiff's goodwill, and by their actions they have diluted Plaintiff's goodwill with Plaintiff's Buyers and will continue to do so. Plaintiff's probable, imminent, and irreparable injuries include:

a)  Defendant Kreines's misappropriation of trade secrets.

b)  Plaintiff's loss of goodwill and customers.

c)  Defendants Kreines's and Ryan's breaches of their noncompetition agreements.

17.     Any suit for money damages would not be an adequate remedy of law to protect Plaintiff's rights.

**IT IS, THEREFORE, ORDERED** that, until the time of final trial on the merits:

1.     **DEFENDANT KREINES**, and any person acting in concert or participation with him who receives actual notice of this Order, is commanded forthwith through January 31, 2026, to cease and desist, and otherwise refrain from directly or indirectly:

a)  Entering or negotiating any transaction with any of Plaintiff's Buyers (as defined above);

b) Encouraging Plaintiff's Buyers (as defined above) to discontinue or limit their relationships with Plaintiff; and

c) Soliciting any of Plaintiff's employees or officers for employment or encouraging them to terminate their relationships with Plaintiff; and

d) Conspiring to circumvent the restrictions imposed by sections a–c.

2.    **DEFENDANT RYAN**, and any person acting in concert or participation with him who receives actual notice of this Order, is commanded forthwith through August 23, 2025, to cease and desist, and otherwise refrain, from directly or indirectly:

a) Entering or negotiating any transaction with any of Plaintiff's Buyers (as defined above);

b) Encouraging Plaintiff's Buyers (as defined above) to discontinue or limit their relationships with Plaintiff; and

c) Soliciting any of Plaintiff's employees or officers for employment or encouraging them to terminate their relationships with Plaintiff.

d) Conspiring to circumvent the restrictions imposed by sections a–c.

3.    **DEFENDANT LMP**, and any person acting in concert or participation with LMP who receives actual notice of this Order, is commanded forthwith to cease and desist, and otherwise refrain, from tortiously interfering with Kreines and Ryan's agreements with Plaintiff not to:

a) Entering or negotiating any transaction with any of Plaintiff's Buyers (as defined above). This expires no later than twenty-four months after Defendants Kreines's and Ryan's terminations of employment with Plaintiff;

b) Encouraging Plaintiff's Buyers (as defined above) to discontinue or limit their relationships with Plaintiff. This expires no later than twenty-four months after Defendants Kreines's and Ryan's terminations of employment with Plaintiff; and

c) Soliciting any of Plaintiff's employees or officers for employment or encouraging them to terminate their relationships with Plaintiff. This expires no later than twenty-four months after Defendants Kreines's and Ryan's terminations of employment with Plaintiff.

d) Conspiring to circumvent the restrictions imposed by sections a–c.

**IT IS FURTHER ORDERED** that trial <mark>is set before the Court on October 20, 2025 at</mark> 9:00 a.m.

The Clerk of the above-entitled Court shall forthwith issue a <mark>Modified Temporary Injunction</mark> in conformity with the law and the terms of this Order.

This Order shall expire at such time as this Court enters judgment in this cause.

<mark>The bond filed by Plaintiff in conjunction with the prior injunction on December 18, 2024, shall be sufficient for the issuance of this Modified Temporary Injunction.</mark>

 

 

<div style="margin-left:50%">

_____

Hon. Patrick K. Sweeten
Judge of the Texas Business Court
Third Division

</div>

DATED: April 7, 2025

# EXHIBIT B



# The Business Court of Texas,
# Third Division

ES3 MINERALS, LLC,

    *Plaintiff/Counter-Defendant,*

v.

NICHOLAS KREINES, DAVID P. RYAN, LIBERTY MINERAL PARTNERS LLC, NAK RESOURCES, INC., AND CGR OIL AND GAS, LLC,

    *Defendants/Counter-Plaintiffs.*

§
§
§
§
§
§
§
§
§
§
§
§

Cause No. 24-BC03B-0005

---

## MODIFIED TEMPORARY INJUNCTION

---

On October 29–30th, 2024, the 459th District Court of Travis County heard Plaintiff ES3 Minerals, LLC's ("Plaintiff" or "ES3") Application for Temporary Injunction. On November 26, 2024, the district court issued a temporary injunction order. Later, the above-captioned case was removed to this Court. This Court held a hearing on February 27, 2025, on Defendants' Motion to Dissolve Temporary Injunction and Plaintiff's Opposed Motion to Modify Temporary Injunction, Subject to Response to Motion to Dissolve and after examining the pleadings and documents, the arguments of counsel, the evidence presented, and the full record, the Court finds as follows:

**VALID CAUSES OF ACTION**

1.       Plaintiff has asserted valid causes of action.

**I.       PROBABLE RIGHT TO RELIEF**

2.       Plaintiff has shown a probable right to relief against Defendants Nicholas Kreines ("Kreines"), David P. Ryan ("Ryan"), and Liberty Mineral Partners LLC ("LMP").

**A.  DEFENDANT KREINES**

3.       The Court finds that Plaintiff has sufficiently shown that it will probably succeed on the merits of its claims against Defendant Kreines for (1) violations of trade secret misappropriation under the Texas Uniform Trade Secrets Act ("TUTSA"), (2) breaches of fiduciary duty, and (3) breaches of contract (confidentiality, non-solicitation-of-buyers, non-solicitation-of-employees, and non-competition provisions).

4.       The Court finds that Plaintiff will probably succeed on its claim that Defendant Kreines kept and continues to use and disclose materials and information that are Plaintiff's trade secrets to land deals for Defendant LMP, including deals with Plaintiff's Buyers; that Defendant Kreines facilitated a deal for Defendant LMP with an existing Plaintiff Buyer while still employed with Plaintiff; and that Defendant Kreines solicited and will continue to solicit Plaintiff's Buyers and employees for Defendant LMP's benefit.

**B.  DEFENDANT RYAN**

5.       The Court finds that Plaintiff has sufficiently shown that it will probably succeed on the merits of its claims against Defendant Ryan for breaches of contract (non-solicitation-of-buyers, non-solicitation-of-employees, and non-competition provisions). Plaintiff has also sufficiently shown for this temporary injunction that the relevant provisions of Defendant Ryan's contract did not change after his brief absence from the company.

6.       The Court finds that Plaintiff will probably succeed in showing that Defendant

Ryan has made and will continue to make deals with Plaintiff's Buyers.

## C. DEFENDANT LMP

7.     The Court finds that Plaintiff will probably succeed in showing that Defendant LMP tortiously interfered with Plaintiff's agreements with Defendants Kreines and Ryan (including their noncompetition and non-solicitation provisions) and will continue to do so.

## D. TRADE SECRETS MISAPPROPRIATED

8.     The Court finds that Plaintiff will probably succeed on its claim that Plaintiff's Buyer information, including buyer lists, pricing information, contact information for key-decision makers, the specific asset preferences of those buyers, and the details of the mineral interest purchases of those buyers are Plaintiff's trade secrets ("Trade Secrets"). The Court further finds that Plaintiff will probably succeed on its claim that Plaintiff has taken reasonable measures under the circumstances to keep this information secret, and this information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, other people who can obtain economic value from the disclosure or use of the information. The Court further finds that Plaintiff will probably succeed on its claim that Kreines misappropriated Plaintiff's Trade Secrets for his own benefit and the benefit of LMP and will continue to do so.

## E. BREACH OF CONTRACT AND INTERFERENCE

9.     The Court finds that Plaintiff will probably succeed on its claim that, as a condition of employment with Plaintiff, Defendants Kreines and Ryan entered into Confidentiality, Non-Competition and Non-Solicitation Agreements with identical terms ("Kreines Agreement" and "Ryan Agreement" respectively, and together, "Agreements").

10.     The Court finds that Plaintiff will probably succeed on its claim that Defendant Kreines has breached the Agreement's confidentiality provisions by taking, using, and disclosing

Plaintiff's Confidential Information for his own benefit and for the benefit of Defendant LMP.

11. In Paragraph 4 of their respective Agreements, Kreines and Ryan agreed to the following restrictions during employment with ES3 and for twenty-four (24) months thereafter:

> <u>Non-Competition; Non-Solicitation of Customers and Prospective Customers</u>. Employee acknowledges that in the course of fulfilling Employee's responsibilities to ES3, Employee will be a representative of the company to, and in some instances may be ES3's primary contact with, existing customers as of the Termination date and prospective customers with whom ES3 has contacted within the 24-month period preceding the Termination date (collectively, "Customers and Prospective Customers"). Employee agrees that the goodwill and relationships developed with ES3's Customers and Prospective Customers is a special, valuable and unique asset of ES3 and should be used for the exclusive benefit of ES3. Accordingly, Employee agrees that, during Employee's employment with ES3 and for twenty-four (24) months thereafter, regardless of the reason for or manner of termination, Employee will not, directly or indirectly, except in connection with Employee's employment with ES3: . . .
>
> (c) induce, solicit or take away (or attempt to induce, solicit, or take away) any Customer or Prospective Customer of ES3 and/or encourage any Customer or Prospective Customer to discontinue or limit its relationship with ES3; … or
>
> (e) divert or discourage any Customer or Prospective Customer from entering into a business relationship with and/or obtaining products or services from ES3.

12. The Court finds that Plaintiff will probably succeed on its claim that: (a) Defendants Kreines and Ryan have breached the Agreements' Non-Competition and Non-Solicitation Provisions by using for their own benefit Plaintiff's' goodwill and that they have diluted Plaintiff's goodwill with Plaintiff's Buyers; (b) Defendants Kreines and Ryan have induced, solicited and taken away (and attempted to induce, solicit, or take away) Plaintiff's Buyers and have encouraged Plaintiff's Buyers to discontinue or limit their relationship with ES3; (c) Defendants Kreines and Ryan have diverted or discouraged Plaintiff's Buyers from entering into a business relationship with and/or obtaining products or services from ES3; and (d) Defendant LMP was aware of Defendant Kreines and Ryan's contractual obligations to Plaintiff and intentionally interfered.

13.     The Court finds that Plaintiff's list of Plaintiff's Buyers attached to this order\* (which is marked CONFIDENTIAL) are ES3 customers for whom Kreines was a representative to and did business with on behalf of ES3 during the 24-month period preceding Kreines's termination date of January 31, 2024, and specifically includes the individuals and entities on the list as well as any subsidiaries of those entities that are known to be subsidiaries by Kreines, Ryan or LMP, and thus are within the definition of Customers and Prospective Customers under the Agreements ("**Plaintiff's Buyers**"). If an individual on the list begins working at a new entity, the new entity is not included within the definition of Plaintiff's Buyers, however the individual on the list remains within the definition of Plaintiff's Buyers and prohibitions on Kreines, Ryan and LMP in this order apply to transactions where they have knowledge the individual is personally involved.

14.     In Paragraph 5 of their respective Agreements, Kreines and Ryan agreed to "that, during Employee's employment with ES3 and for twenty-four (24) months thereafter, regardless of the reason for or manner of termination, Employee will not, on behalf of Employee or any other person or entity except ES3, directly or indirectly hire, solicit, induce or encourage (or attempt to hire, solicit, induce or encourage) any employee or officer of ES3 to terminate his/her relationship with ES3, without the prior written consent of ES3." The Court finds that Plaintiff will probably succeed on its claim that Defendants Kreines and Ryan violated their Agreements by soliciting Plaintiff's employees, including Curtis Menchaca, inducing them to terminate their employment with Plaintiff and work for LMP.

---

\* The attached Plaintiff's Buyers list has not been modified.

15. The Court finds that Plaintiff will probably succeed on its claim that the Agreements are valid, and the post-employment restrictions recited above were ancillary to or a part of an otherwise enforceable agreement at the time the Agreements were made; ES3 performed under the Agreements; and Defendants Kreines and Ryan violated the Agreements and continue to do so.

## II.    PROBABLE, IMMINENT, AND IRREPARABLE HARM

16. The Court finds that Plaintiff has shown there would be a probable imminent, and irreparable injury from the actions it seeks to enjoin. Plaintiff has shown the loss of exclusive use of its Trade Secrets, a loss of deals with specific buyers, a decrease in gross profits, and a loss of employees, which is likely to continue unless Defendants are enjoined. Defendants Ryan and Kreines were closely associated with Plaintiff's goodwill, and by their actions they have diluted Plaintiff's goodwill with Plaintiff's Buyers and will continue to do so. Plaintiff's probable, imminent, and irreparable injuries include:

a)  Defendant Kreines's misappropriation of trade secrets.

b)  Plaintiff's loss of goodwill and customers.

c)  Defendants Kreines's and Ryan's breaches of their noncompetition agreements.

17. Any suit for money damages would not be an adequate remedy of law to protect Plaintiff's rights.

**IT IS, THEREFORE, ORDERED** that, until the time of final trial on the merits:

1. **DEFENDANT KREINES**, and any person acting in concert or participation with him who receives actual notice of this Order, is commanded forthwith through January 31, 2026, to cease and desist, and otherwise refrain from directly or indirectly:

a)  Entering or negotiating any transaction with any of Plaintiff's Buyers (as defined

above);

b) Encouraging Plaintiff's Buyers (as defined above) to discontinue or limit their relationships with Plaintiff; and

c) Soliciting any of Plaintiff's employees or officers for employment or encouraging them to terminate their relationships with Plaintiff; and

d) Conspiring to circumvent the restrictions imposed by sections a–c.

2. **DEFENDANT RYAN**, and any person acting in concert or participation with him who receives actual notice of this Order, is commanded forthwith through August 23, 2025, to cease and desist, and otherwise refrain, from directly or indirectly:

a) Entering or negotiating any transaction with any of Plaintiff's Buyers (as defined above);

b) Encouraging Plaintiff's Buyers (as defined above) to discontinue or limit their relationships with Plaintiff; and

c) Soliciting any of Plaintiff's employees or officers for employment or encouraging them to terminate their relationships with Plaintiff.

d) Conspiring to circumvent the restrictions imposed by sections a–c.

3. **DEFENDANT LMP**, and any person acting in concert or participation with LMP who receives actual notice of this Order, is commanded forthwith to cease and desist, and otherwise refrain, from tortiously interfering with Kreines and Ryan's agreements with Plaintiff not to:

a) Entering or negotiating any transaction with any of Plaintiff's Buyers (as defined above). This expires no later than twenty-four months after Defendants Kreines's and Ryan's terminations of employment with Plaintiff;

b) Encouraging Plaintiff's Buyers (as defined above) to discontinue or limit their relationships with Plaintiff. This expires no later than twenty-four months after Defendants Kreines's and Ryan's terminations of employment with Plaintiff; and

c) Soliciting any of Plaintiff's employees or officers for employment or encouraging them to terminate their relationships with Plaintiff. This expires no later than twenty-four months after Defendants Kreines's and Ryan's terminations of employment with Plaintiff.

d) Conspiring to circumvent the restrictions imposed by sections a–c.

**IT IS FURTHER ORDERED** that trial is set before the Court on October 20, 2025 at 9:00 a.m.

The Clerk of the above-entitled Court shall forthwith issue a Modified Temporary Injunction in conformity with the law and the terms of this Order.

This Order shall expire at such time as this Court enters judgment in this cause.

The bond filed by Plaintiff in conjunction with the prior injunction on December 18, 2024, shall be sufficient for the issuance of this Modified Temporary Injunction.

_____
Hon. Patrick K. Sweeten
Judge of the Texas Business Court
Third Division

DATED: April 7, 2025

# Exhibit A

**CONFIDENTIAL**

## PLAINTIFF'S BUYERS

"ES3 Buyers" shall mean any contact and/or decision maker who is/was associated with the following entities:



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cathy Daniels on behalf of James Parker
Bar No. 24027591
cdaniels@lglawfirm.com
Envelope ID: 99429833
Filing Code Description: Motion
Filing Description: Appellants' Unopposed Motion for Appellate Review
Status as of 4/8/2025 4:49 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James F.Parker | | jparker@lglawfirm.com | 4/8/2025 4:37:46 PM | SENT |
| Gabrielle C.Smith | | gsmith@lglawfirm.com | 4/8/2025 4:37:46 PM | SENT |
| Sydney P.Sadler | | ssadler@lglawfirm.com | 4/8/2025 4:37:46 PM | SENT |
| Michael D.Marin | | mmarin@boulettegolden.com | 4/8/2025 4:37:46 PM | SENT |
| Tori B.Bell | | tori@boulettegolden.com | 4/8/2025 4:37:46 PM | SENT |
| Steven Garrett | | steven@boulettegolden.com | 4/8/2025 4:37:46 PM | SENT |